UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARDENT SERVICE CORPORATION,

    Plaintiff/Counter-Defendant,

v

GRAND BEACH REAL ESTATE
INVESTMENT, LLC, THE MINTON
LAW FIRM, P.C., and MICHAEL H.
MINTON,

    Defendants/Counter-
    Plaintiffs/Third-Party Plaintiffs,

v

GINA STRAUCH, THE TALON
GROUP, CARIE O'DONNELL, and
COLDWELL BANKER REAL
ESTATE,

    Third-Party Defendants.

_____/

Case No. 1:12-cv-583

HON. JANET T. NEFF

## **OPINION**

    This diversity case arises from the 2006 purchase and financing of a commercial parcel of real estate located in Three Oaks, Michigan. Pending before the Court are the motions for summary judgment filed by Third-Party Defendants (Dkts 121 & 123), which concern Third-Party Defendants' and Third-Party Plaintiffs' competing claims about the execution of the transactional documents. Having conducted a Pre-Motion Conference in this matter and having fully considered the parties' written briefs, stipulated statement of material facts and accompanying exhibits, the

Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court determines that both motions are properly granted.

## I. BACKGROUND

### A. Factual Background

Michael H. Minton ("Minton") is an attorney licensed since 1971 to practice law in the State of Illinois (Dkt 112, Joint Statement of Material Facts [JSMF] ¶ 2). On January 2, 2006, Minton signed a Buy Sell Agreement, with an effective date of December 5, 2005, to purchase the commercial property at issue ("the Property"), which is located at 15311 Three Oaks Road, in the Township of Three Oaks, Berrien County, Michigan (*id.* ¶ 1). Minton's signature appears on the Buy Sell Agreement at page 5 of 5, as well as the Addendum to the Buy Sell Agreement (*id.*).

On April 14, 2006, Minton signed a Loan Commitment for Financing the Property with First Place Bank, Ardent Service Corporation's predecessor-in-interest (JSMF ¶ 3). Minton's signature appears on page 4, where he signed as Borrower on behalf of the Law Office of Michael Harry Minton, PC; Michael H. Minton as Guarantor; and the Law Office of Michael Minton, PC as Guarantor (*id.*). On April 27, 2006, Minton signed a Personal Financial Statement (*id.* ¶ 4).

The closing was scheduled for May 26, 2006, at the offices of The Talon Group in New Buffalo, Michigan (JSMF ¶ 9; Dkt 24, 3d Party Compl. ¶ 16). Minton was unable to attend the scheduled closing due to a conflict in his schedule (Third Party Pls.' Br., Dkt 125 at 2). On May 25, 2006, Minton signed a General Power of Attorney, appointing Carie O'Donnell ("O'Donnell") as Minton's attorney-in-fact (JSMF ¶ 5). The General Power of Attorney was effective on May 25, 2006 and remained effective until May 27, 2006 (*id.*). Minton read the General Power of Attorney

before signing it (*id.* ¶ 6).  O'Donnell was a licensed real estate agent employed by or contracted with Coldwell Banker Real Estate (Dkt 24, 3d Party Compl. ¶ 12).  Minton has known O'Donnell for approximately 15 years (JSMF ¶ 7).

      At the closing, O'Donnell signed "Michael H. Minton" on the following documents:

- An Authorization to Guaranty by Corporation;

- An Individual Guaranty;

- An Authorization by Limited Liability Company;

- An Unlimited Continuing Debt Guaranty by the Minton Firm, P.C.;

- A Commercial Loan Agreement between Lender, First Place Bank, and Borrower, Grand Beach Real Estate Investment, LLC;

- A Promissory Note between Lender, First Place Bank, and Borrower, Grand Beach Real Investment, LLC;

- A Mortgage by Grand Beach Real Estate Investment, LLC, Mortgagor, to Lender, First Place Bank;

- An Assignment of Leases and Rents from Assignor, Grand Beach Real Estate Investment, LLC to Lender, First Place Bank; and

- The Talon Group's Final Statement of Costs.

(JSMF ¶ 9).  Gina C. Strauch ("Strauch"), a Michigan Notary Public and employee of The Talon Group, notarized the following three documents:

- The General Power of Attorney;

- The Mortgage; and

- The Assignment of Leases and Rents.

(JSMF ¶¶ 8, 10; Dkt 24, 3d Party Compl. ¶¶ 17-18).  Strauch also signed the Affidavit of Lost Document, which was recorded with the Berrien County Register of Deeds on June 19, 2006 (JSMF ¶ 11).  Minton received $41,600.00 in proceeds from the closing (*id.* ¶ 12).

On May 6, 2011, First Place Bank sent a Loan Maturity Notice to "Grand Beach Real Estate, Attention: Michael Minton, The Minton Group," at The Minton Firm's address (JSMF ¶ 14). Grand Beach Real Estate Investment, LLC is a single-member LLC owned by Minton (*id.* ¶ 13).

On June 6, 2011, First Place Bank sent a Loan Late Notice to "Grand Beach Real Estate, Attention: Michael Minton and The Minton Group," at The Minton Firm's address (JSMF ¶ 15). On July 25, 2011, First Place Bank sent a Loan Delinquent Notice, Second Request to Minton at his home address (*id.* ¶ 16).

On August 9, 2011, Grand Beach Real Estate Investment, LLC defaulted on its Promissory Note (JSMF ¶ 17).  First Place Bank provided Notice of Default and Loan Acceleration to Grand Beach Real Estate Investment, LLC; the Minton Firm, PC; and Minton (*id.*).  On March 16, 2012, the Bank notified Grand Beach Real Estate Investment, LLC; the Minton Firm, PC; and Minton, as Borrower and Guarantors, of a deficiency due and owing after foreclosure at a sheriff's sale (*id.* ¶ 18).

## B. Procedural Posture

On June 8, 2012, Ardent Service Corporation filed its complaint in this Court, claiming a deficiency principal balance due and owing in the amount of $198,321.95, together with costs and fees, following the default (Dkt 1, Compl. ¶ 50).  Ardent Service Corporation alleges Breach of the Note against Grand Beach Real Estate Investment (Count I), and Breach of Guarantee against both The Minton Firm, PC (Count II) and Minton (Count III).  On November 30, 2012, Grand Beach Real

Estate Investment, The Minton Firm, PC and Minton filed a Counter-Claim against Ardent Service Corporation, seeking a "Declaratory Judgment Re: Lack of Capacity to Execute Loan Document" (Counter-Claim, Dkt 23 at 5).

Grand Beach Real Estate Investment, The Minton Firm, PC and Minton also filed a Third-Party Complaint against Strauch, The Talon Group, O'Donnell and Coldwell Banker Real Estate (Dkt 24). In Count I, Third-Party Plaintiffs allege Violation of Notary Statute against Strauch and The Talon Group. Specifically, Third-Party Plaintiffs allege that the General Power of Attorney is void or voidable because (a) Strauch is not an Illinois Notary Public; (b) Minton did not appear before Strauch; (c) Strauch did not witness Minton's execution of the General Power of Attorney; and (d) Strauch did not notarize Minton's original signature but, upon information and belief, signed a facsimile copy of the General Power of Attorney (Dkt 24, 3d Party Compl. ¶¶ 31-32). Third-Party Plaintiffs allege that the General Power of Attorney "failed to afford any authorization or legal capacity to the designated agent, O'Donnell, to act on behalf of Grand Beach or the Minton Firm or Minton" (*id.* ¶ 32).

In Count II, Third-Party Plaintiffs allege Breach of Agency Relationship against Coldwell Banker Real Estate and O'Donnell. Specifically, Third-Party Plaintiffs allege that Minton appointed O'Donnell for the "limited purpose of executing closing documents and loan documents on behalf of Grand Beach in order to consummate the sale and purchase of the property" (Dkt 24, 3d Party Compl. ¶ 37). According to Third-Party Plaintiffs, "it was expressly agreed by and between Minton, the Minton Firm, and O'Donnell that she would not have authority to execute any individual Guaranty on behalf of Minton, nor any individual Guaranty on behalf of The Minton Firm" (*id.* ¶ 38).

Third-Party Plaintiffs request Judgment in their favor and against Third-Party Defendants Strauch, The Talon Group, O'Donnell and Coldwell Banker Real Estate in the amount of $198,321.95, together with costs, attorneys fees and interest from and after April 5, 2012, "or whatever amount to which they may be found to be indebted to Plaintiff Ardent Service Corporation upon the underlying Complaint in this cause of action" (Dkt 24, 3d Party Compl.).

In December 2013, the parties stipulated to the filing of a First Amended Complaint (Dkt 88). Ardent Service Corporation's First Amended Complaint (Dkt 89) added three more claims against Minton, to wit: Fraud (Count IV), Bad Faith Promise (Count V) and Innocent Misrepresentations (Count VI). In January 2014, following expiration of the discovery deadline, all parties proposed to file dispositive motions (Dkts 91, 95-97). The Court conducted a Pre-Motion Conference with counsel in March 2014 and subsequently set forth a schedule for a first round of briefing from the third parties, to be followed by Alternative Dispute Resolution, and, if necessary, additional dispositive motions (Dkts 109 & 111).

In June 2014, Third-Party Defendants Strauch and The Talon Group filed their motion for summary judgment (Dkt 121), to which Third-Party Plaintiffs filed a response (Dkt 125) and Third-Party Defendants Strauch and The Talon Group filed a reply (Dkt 127). Third-Party Defendants O'Donnell and Coldwell Banker Real Estate also filed their motion for summary judgment (Dkt 123), to which Third-Party Plaintiffs filed a response (Dkt 126) and Third-Party Defendants O'Donnell and Coldwell Banker Real Estate filed a reply (Dkt 128).

## II.  ANALYSIS

### A.  Motion Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial.  *Slusher,* 540 F.3d at 453.  The ultimate inquiry is "whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Because this is a diversity action, the substantive law of Michigan applies.  *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2001).  This Court must follow and apply Michigan law in accordance with the controlling decisions of the Supreme Court of Michigan.  *Id.*

### B.  Discussion

**1.**     ***The Talon Group & Gina Strauch***

Relying on the holding in *Hope v. Victor*, 162 N.W.2d 918, 920 (Mich. Ct. App. 1968), Third-Party Defendants Strauch and The Talon Group argue that Strauch's failure to personally identify Minton before he notarized the power of attorney is not the proximate cause of Third-Party Plaintiffs' injuries (Dkt 122 at 11).  Strauch and The Talon Group argue that Third-Party Plaintiffs

cannot establish a causal connection between their default on the loan and Strauch's failure to identify Minton before notarizing his signature (*id.*). They argue that like the facts in *Hope*, where forgery was not at issue, there is no concern here that Strauch certified a forged signature (*id.* at 12). They point out that Minton admits that he read and signed the General Power of Attorney and further admits that he faxed it to O'Donnell, his agent (*id.*).

Strauch and The Talon Group argue that even if Minton did not admit to signing the General Power of Attorney, Minton's own actions show that he undoubtedly intended for himself and The Minton Firm to personally guaranty the Promissory Note (Dkt 122 at 12). They emphasize that the Commitment Letter was sent to The Minton Firm and addressed to Minton, highlighted Minton and The Minton Firm's names as the parties from whom the guaranties would be required, and required Minton and The Minton Firm to provide the Bank with documentation consistent with personally guarantying a debt, which they did (*id.* at 13). They further emphasize that the Bank sent its Loan Maturity Note and Loan Late Notice to The Minton Firm, to Minton's attention, and the Bank sent the Loan Delinquent Notice to Minton's personal address (*id.*). They last emphasize that Minton and The Minton Firm did not dispute the personal guaranties until years after the closing (*id.*). Strauch and The Talon Group argue that based on the foregoing, this Court should conclude that there is no question that Strauch's actions, or lack thereof, had no bearing whatsoever on the fact that Minton and The Minton Firm are ultimately responsible for the repayment of an outstanding indebtedness due and owing following the foreclosure of the Property (*id.*).

Third-Party Plaintiffs agree that an improper notarization should not be regarded as the proximate cause of an injury where the one who purported to sign the document did, in fact, sign and was prepared to properly swear before a notary; however, Third-Party Plaintiffs argue that

8

Minton, unlike the plaintiff in *Hope*, "was not prepared to properly swear before a notary" (Dkt 125 at 4-5). Specifically, Third-Party Plaintiffs contend that "Minton was given a power of attorney with no wording which would put him on notice that it was going to be notarized, and because he told Ms. O'Donnell not to sign any personal or corporate guarantees on his behalf, it follows that although he signed the power of attorney, he was not prepared to properly swear before a notary" (*id.* at 7). Pointing out that Strauch inscribed the jurat in her handwriting and notarized the instrument, Third-Party Plaintiffs argue that had Strauch not fraudulently notarized the General Power of Attorney, the Real Estate Mortgage O'Donnell signed could not have been recorded and the closing could not have been finalized (*id.* at 10). Consistent with the allegation in their Third-Party Complaint (Dkt 24, 3d Party Compl. ¶ 35), Third-Party Plaintiffs last argue that because Strauch committed the tort while involved in a service of benefit to her employer, The Talon Group is liable under the doctrine of respondeat superior (*id.* at 11-12).

In reply, Third-Party Defendants Strauch and The Talon Group argue that Third-Party Plaintiffs misinterpret the meaning of the phrase "prepared to properly swear before a notary" from *Hope* (Dkt 127 at 2). They also argue that, in any event, there is no question that Minton intended to execute a power of attorney providing O'Donnell authority to execute closing documents on his behalf and similarly no question that Third-Party Plaintiffs ratified O'Donnell's conduct by not disputing her actions until they were sued by the Bank (*id.* at 2-3, 5). Last, they reiterate that Strauch's notarization of the General Power of Attorney did not cause Third-Party Plaintiffs to default on their obligations under the Note (*id.* at 4).

Under the Michigan Notary Public Act (MNPA), MICH. COMP. LAWS § 55.261 *et seq.*, a notary public may be liable in a civil action for the damages sustained by the persons injured. MICH.

9

COMP. LAWS § 55.297(1). The notary public's employer may also be liable if (a) the notary public was acting within the actual or apparent scope of her employment, and (b) the employer had knowledge of and consented to or permitted the official misconduct. *Id.* § 297(2).

In *Hope*, the case upon which Strauch and The Talon Group rely, the plaintiff brought an action against a notary public for alleged improper notarization. 162 N.W.2d at 919. Specifically, the plaintiff alleged that the notary public "allowed her name to be affixed to the jurat by the affiant without having personally witnessed the signature or administered the oath as required." *Id.* The plaintiff claimed that the malfeasance was a proximate cause of the injuries that subsequently ensued. *Id.* The defendants moved for summary judgment for the reason that the plaintiff failed to show any proximate causal connection between the breach of duty by the notary and the injuries. *Id.* at 920. The trial judge granted the motion, and the plaintiff appealed. *Id.*

The Michigan court of appeals affirmed the trial judge's decision to grant summary judgment. As a threshold matter, the Michigan court of appeals observed that "it is settled in this State (and indeed generally throughout the jurisdictions) that breach of the office of notary does not give rise to an action unless such breach was the proximate cause of the injuries sustained." *Hope*, 162 N.W.2d at 920 (citing 66 C.J.S. Notaries § 11). The court also observed that in the case before it, no claim was made that the means of giving notice were not in accordance with the statutory procedures and no claim was made that the affiant did not in fact sign the affidavit. *Id.* The court opined that "an improper notarization should not be regarded as the proximate cause of injury where the one who purported to sign the document did in fact sign, and was prepared to properly swear before a notary; and we so hold." *Id.* The court found the case was "markedly distinct from a

situation where the notary certified a forged signature to a document which led to the injury complained of." *Id.* at 921.

The Court agrees with Third-Party Defendants Strauch and The Talon Group that "prepared to properly swear before a notary" simply means that "Minton was prepared to verify that the signature on the Power of Attorney was his, not to swear that Ms. O'Donnell actually had authority to perform the duties referenced in the Power of Attorney" (Reply, Dkt 127 at 2). Although the decision in *Hope* has not been applied since its issuance, any other interpretation belies common sense. The purpose of the General Power of Attorney was the convenience of Minton, and Minton received the benefit of that convenience: he did not have to travel to Michigan to attend the closing and carry out the pro forma exercise of signing the documents.

Therefore, applying the rule of law from *Hope* here, the Court agrees that the record in this case likewise does not support finding that Strauch's actions, or inactions, proximately caused Third-Party Plaintiffs' injuries. Specifically, the Court agrees that the undisputed facts demonstrate that her actions or inactions have no bearing on the fact that Minton and The Minton Firm, PC are ultimately responsible for the repayment of any outstanding indebtedness due and owing following the foreclosure of the Property. In sum, the state of the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Rather, Third-Party Defendants Strauch and The Talon Group have demonstrated that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on the Third-Party Complaint against them.

**2.**     ***Coldwell Banker Real Estate & Carie O'Donnell***

Third-Party Defendants O'Donnell and Coldwell Banker Real Estate argue that even if there was irregularity in the way the General Power of Attorney was notarized, the document is

11

unambiguous and there is no allegation of any fraud, coercion or other affirmative defense that might be used to void its effect (Dkt 124 at 6-8). They argue that Minton therefore cannot offer his testimony, or O'Donnell's interpretation, to contradict the plain language of the General Power of Attorney (*id.* at 9-12). O'Donnell and Coldwell Banker Real Estate argue that principles of estoppel also apply to prevent Minton, who acquired the Property and received cash proceeds at closing, from now arguing that O'Donnell did not have authority to act as his representative in signing the closing documents (*id.* at 11-12). Last, O'Donnell and Coldwell Banker argue that there is nothing in the record in this case that demonstrates that O'Donnell acted outside the scope of her authority with willful intent to cause any harm to her principal (*id.* at 12-14).

In response, Third-Party Plaintiffs assert that O'Donnell is personally liable for any contracts made on Minton's behalf where she admitted that she acted outside the scope of the authority Minton conferred on her (Dkt 126 at 4-5). Third-Party Plaintiffs emphasize that O'Donnell is presumed to have understood the documents, even if she did not read them (*id.* at 6). Third-Party Plaintiffs argue that O'Donnell's personal liability precludes application of principles of estoppel (*id.* at 7). They also argue that the limited liability clause in the General Power of Attorney is inapplicable here, where O'Donnell admits that she did not even read the document she was signing, and that, in any event, her actions fall outside the scope of the clause as her actions constitute wilful misconduct (*id.* at 8). Last, they argue that the parol evidence rule is inapplicable where both O'Donnell and Minton agree that O'Donnell exceeded the scope of her authority (*id.* at 10-11). Conversely, Third-Party Plaintiffs assert that the parol evidence will demonstrate Minton's intent to grant O'Donnell only limited authority to sign certain documents, not a general power of attorney (*id.* at 12-15). Third-Party Plaintiffs also argue that Coldwell Banker is liable to them because

O'Donnell, its employee, while employed and within the scope of her employment with Coldwell Banker, committed an act that caused harm to Third-Party Plaintiffs (*id.* at 16-17).

Under Michigan law, the parol evidence rule operates to exclude evidence of prior contemporaneous agreements, whether oral or written, which contradict, vary or modify an unambiguous writing intended as a final and complete expression of the agreement. *United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 409-10 (6th Cir. 2004) (citing *Ditzik v. Schaffer Lumber Co.*, 360 N.W.2d 876, 880 (Mich. Ct. App. 1984); *Detroit Bank & Trust Co. v. Coopes*, 287 N.W.2d 266, 269 (Mich. Ct. App. 1979)). Where the operative language of a contract is ambiguous, a court can look to parol evidence to construe it as long as that evidence is not inconsistent with the written words. *Id.* at 409. "A contract is ambiguous if 'its words may reasonably be understood in different ways.'" *UAW–GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (quoting *Raska v. Farm Bureau Ins. Co.*, 314 N.W.2d 440, 441 (Mich. 1982)).

Here, the Court agrees that the terms of the General Power of Attorney are precise and unambiguous. Indeed, as O'Donnell and Coldwell Banker Real Estate point out, the General Power of Attorney states that it "shall be construed broadly as a General Power of Attorney. The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner" (Dkt 124 at 9, quoting Joint Ex. D, Dkt 112-4).

Third-Party Plaintiffs do not identify any ambiguity but argue that the parol evidence rule is inapplicable where both O'Donnell and Minton purportedly orally agreed to a more narrow scope of authority. However, "[t]he intention of the parties is to be deduced from the language employed by them. The question is not what intention existed in the minds of the parties, but what intention was expressed in the language used; and where unambiguous, the terms of the [agreement] are

conclusive." *Moore v. Kimball*, 289 N.W. 213, 215 (Mich. 1939); *see also Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). As the Michigan supreme court long ago realized, there exists an "importance of certainty in instruments authorizing the conveyance of lands, and by the serious consequences likely to arise if it be determined that a power of attorney may mean one thing or another, as the tints of surrounding circumstances resting on parol testimony may vary." *Penfold v. Warner*, 55 N.W. 680, 680 (Mich. 1893).

In sum, the state of the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Rather, Third-Party Defendant O'Donnell has demonstrated that there is no genuine dispute as to any material fact, that the General Power of Attorney provided O'Donnell with authority to execute the closing documents on Minton's behalf, and that O'Donnell is entitled to judgment as a matter of law on the Third-Party Complaint filed against her. Further, because Coldwell Banker Real Estate's liability, if any, is wholly dependent on its status as O'Donnell's employer (Dkt 24, 3d Party Compl. ¶ 47), Coldwell Banker Real Estate is likewise entitled to judgment as a matter of law on the Third-Party Complaint.

### III. CONCLUSION

For the foregoing reasons, the Court grants the motion for summary judgment filed by Third-Party Defendants Strauch and The Talon Group (Dkt 121) and grants the motion for summary judgment filed by Third-Party Defendants Coldwell Banker Real Estate and O'Donnell (Dkt 123).

DATED: November 13, 2014         /s/ Janet T. Neff
                                             JANET T. NEFF
                                             United States District Judge